| | |
|---|---|
| BRIAN MOORE, individually, and on behalf of himself and other similarly situated current and former employees,<br><br>    Plaintiff,<br><br>v.<br><br>ANYTIME TOWING & RECOVERY, LLC,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No.:   3:20-CV-540-TAV-JEM<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on defendant's motion to dismiss, or, in the alternative, motion for summary judgment [Doc. 38]. Plaintiff responded [Doc. 44]. Defendant has not replied, and the time for doing so has passed. *See* E.D. Tenn. L.R. 7.1(a), 7.2. Accordingly, this matter is now ripe for the Court's review. Plaintiff has also filed a motion for leave to file a motion for partial summary judgment [Doc. 51], and defendant responded [Doc. 52]. For the reasons below, defendant's motion for summary judgment [Doc. 38] will be **GRANTED in part and DENIED in part**, and plaintiff's motion for leave to file a motion for partial summary judgment [Doc. 51] will be **DENIED.**

### I. Background

Plaintiff brings this action under the Fair Labor Standards Act ("FLSA"), alleging that defendant failed to compensate plaintiff and other similarly situated employees at the required minimum wage and overtimes rates [*See* Doc. 1]. Defendant is a Department of Transportation ("DOT") registered motor carrier engaged in vehicle towing and recovery services [Doc. 39-4,

p. 1]. Defendant employed plaintiff as a tow truck driver from November 24, 2019, to February 29, 2020, and October 6, 2020, to November 24, 2020 [Doc. 44-1, p. 1]. Defendant paid plaintiff commission based on each "tow job" he completed [*Id.*].

Defendant's employee handbook (the "Handbook") explains that tow truck drivers receive 22% of the total amount charged to the customer for roadside tows and repossession, 25% for illegal parking tows, and 15% for recovery tows [Doc. 39-1, p. 35]. The Handbook further provides that "[o]vertime is paid at 1.5 times the employee's regular hourly rate for hours worked over 40 hours in a workweek for hourly W-2 employees[,]" and employees are responsible for recording their own time [*Id.* at 35, 37]. Defendant purports that a tow-book log shows that tow truck drivers are compensated at a higher rate than they would receive if they earned minimum wage and overtime pay [Doc. 39-2].

In the complaint, plaintiff alleged that he and those similarly situated were not paid "at least at the FLSA required minimum wage rate pay of $7.25 per hour" and "one and one-half times their regular hourly rate of pay for all hours over 40 per week within weekly pay periods during all times material" [Doc. 1 ¶¶ 11–12]. Plaintiff also pleaded that he and other similarly situated individuals drove "snatch" trucks with a gross vehicle weight rating ("GVWR") of less than five tons during all times relevant [*Id.* ¶ 8]. Defendant contends that plaintiff exclusively operated vehicles with a GVWR of more than 10,000 pounds [Doc. 39-4, p. 2].

Additionally, plaintiff alleged that defendant failed to record all hours worked by plaintiff and those similarly situated [Doc. 1 ¶ 20]. Plaintiff brings this collective action for minimum wage and overtime violations under the FLSA [*Id.* ¶¶ 8–10]. Defendant has moved for summary judgment on plaintiff's FLSA claims [Doc. 38].

2

## II. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). As such, the moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). To successfully oppose a motion for summary judgment, "[t]he non-moving party . . . must present sufficient evidence from which a jury could reasonably find for h[er]." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 252 (1986)).

## III. Analysis

### A. Defendant's Motion for Summary Judgment[1]

Defendant argues that it is entitled to summary judgment on plaintiff's FLSA claims because: (1) the Handbook shows that defendant complied with the FLSA minimum wage requirements; and (2) plaintiff is not owed overtime compensation because he is subject to the motor carrier exemption [Doc. 39, pp. 9–12]. Plaintiff responds that his discovery responses and affidavit create genuine issues of material fact as to whether defendant complied with the FLSA minimum wage requirements and whether the motor carrier exemption applies [Doc. 44, pp. 7–10].

---

[1] Defendant's motion seeks dismissal, or in the alternative, summary judgment [Doc. 38]. Because the Court addresses this motion under the summary judgment standard, it need not address the motion to dismiss standard.

3

### 1. FLSA Minimum Wage Violation Claim

Turning to plaintiff's minimum wage claim, defendant asserts that it properly paid plaintiff on a commission basis pursuant to the Handbook [Doc. 39, p. 10]. In particular, defendant alleges that it paid plaintiff 22% of the service charge for roadside and repossession tows, 25% for illegal parking tows, and 15% for recovery tows [*Id.*]. In support, defendant references a tow-book log, which allegedly shows that defendant paid plaintiff in compliance with the FLSA [*Id.*]. Defendant contends that, had it paid plaintiff in strict compliance with the FLSA, plaintiff would have earned $2,772.27; however, since defendant pays tow truck operators on a commission basis, plaintiff earned $6,477.97 [*Id.*].

Plaintiff responds that his affidavit and discovery responses evidence unrecorded hours, creating an issue of fact as to plaintiff's minimum wage claim [Doc. 44, p. 8].

The FLSA requires employers "to pay the federal minimum wage and provide overtime to those employees covered by the Act's overtime provisions." *Blodgett v. FAF, Inc.*, 446 F. Supp. 3d 320, 325 (E.D. Tenn. 2020) (citing 29 U.S.C. § 206(a)(1)(C)). To recover unpaid wages under the FLSA, an employee "must prove by a preponderance of evidence that he or she 'performed work for which he [or she] was not properly compensated.'" *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946)). "Generally, this burden is easily satisfied by obtaining records from the employer, who is required under the FLSA to keep records of wages and hours of employment." *Loew v. Regret, Inc.*, 590 F. Supp. 3d 1068, 1077 (S.D. Ohio 2022). Further, an employee may show that he performed work for which he was not properly compensated by "detail[ing] the specific hours that the employee typically worked." *Viet v. Lee*, 951 F.3d 818, 823 (6th Cir. 2020).

4

For instance, in *Moran v. Al Basit, LLC*, 788 F.3d 201, 205 (6th Cir. 2015), the Sixth Circuit reversed the district court's grant of summary judgment on an FLSA claim because the plaintiff's testimony "coherently describe[d] his weekly work schedule, including typical daily start and end times which he used to estimate a standard work week of [65] to [68] hours." There, the plaintiff presented testimony that he typically worked 7:30 a.m. to 6:30 p.m. or 7:00 p.m. on weekdays, 7:30 a.m. to 4:30 p.m. or 5:00 p.m. on Saturdays, and occasional Sundays. *Id.* at 203. In contrast, the Sixth Circuit in *Viet* found that the plaintiff's conclusory statement that he typically worked 60 hours per week was insufficient to survive summary judgment. 951 F.3d at 824.

Here, plaintiff's discovery responses state that he "does not remember his exact dates of employment, but . . . he was employed by [d]efendant from Spring 2017 – Spring 2019 and then Winter 2019 [–] Winter 2020" [Doc. 39-3, p. 7]. Plaintiff's affidavit provides that he "was employed by [defendant] from November 24, 2019[,] to February 29, 2020[,] and October 6, 2020[,] to November 24, 2020[,]" and that he "worked in excess of 75 hours per week" [Doc. 44-1].

Thus, unlike the plaintiff in *Moran*, plaintiff did not "coherently describe[] his weekly work schedule" such that a rational juror could find that he performed work for which he was not properly compensated. *See Moran*, 788 F.3d at 205. Although plaintiff need not "recall [his schedule] with perfect accuracy[,]" plaintiff has failed to "present sufficient evidence from which a jury could reasonably find for him." *See id.* at 205; *Jones*, 625 F.3d at 940 (citing *Anderson*, 447 U.S. at 252).

Nevertheless, defendant provided evidence of a tow-book log purportedly showing that defendant paid plaintiff $6,477.97 during his employment, exceeding the amount of $2,772.27

5

required under strict FLSA compliance [Doc. 39-2]. Since plaintiff has not met his burden and defendant responded with evidence of FLSA-compliant compensation, there is no genuine issue of material fact as to plaintiff's minimum wage violation claim, which will be **DISMISSED**.

2. **FLSA Overtime Violation Claim**

Defendant further contends that plaintiff's overtime compensation claim fails because plaintiff is subject to the motor carrier exemption [Doc. 39, pp. 11–14]. Specifically, defendant asserts that: (1) it is a DOT-registered motor carrier engaged in towing and recovery services; (2) plaintiff was employed as a truck driver whose duties included driving, securing, and transporting vehicles using heavy-duty trucks; (3) plaintiff exclusively operated vehicles with GVWRs of more than 10,000 pounds; and (4) plaintiff's assignments routinely involved the transportation of vehicles as part of a chain involving interstate movement [*Id.* at 11–12].

In response, plaintiff argues that there is a genuine issue of material fact as to whether plaintiffs are exempt under the motor carrier exemption [Doc. 44, pp. 8–10]. Plaintiff points to his affidavit stating that he operated a vehicle with a GVWR of less than 10,000 pounds on a weekly basis, and within the regular course and scope of his employment he did not travel across state lines [*Id.* at 8]. Additionally, plaintiff relies on his testimony that he mainly performed road-side tows for non-commercial vehicles, and the vehicles he drove were not part of a chain involving interstate commerce [*Id.*].

Generally, the FLSA requires employers "to pay its employees overtime wages at a rate of not less than one-and-a-half times the regular rate of pay for every hour that employees work over 40 hours per week." *Viet*, 951 F.3d at 822; 29 U.S.C. § 207(a)(1). However, "[u]nder the [m]otor-[c]arrier [e]xemption, commercial motor vehicle drivers who engage in

6

'interstate commerce' are not entitled to overtime pay." *Gowey v. True Grip & Lighting, Inc.*, 520 F. Supp. 3d 1013, 1017 (E.D. Tenn. 2021).

Specifically, the FLSA does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service[.]" 29 U.S.C. § 213(b)(1). The Secretary of Transportation has the power "'to regulate . . . an employee (1) who works for a private motor carrier that provides transportation in interstate commerce and (2) whose work activities affect the safety of operation of that motor carrier.'" *Sec'y of Labor v. Timberline S., LLC*, 925 F.3d 838, 850 (6th Cir. 2019) (quoting *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 904 (6th Cir. 2002)). "The employer bears the burden of proving that it qualifies for a claimed exemption." *Id.* at 850 (citing *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 578 (6th Cir. 2004)). Further, exemptions from FLSA overtime requirements are narrowly construed against employers. *Morgan v. Gandalf Ltd.*, 165 F. App'x 425, 433 (6th Cir. 2006) (citing *Martin*, 381 F.3d at 578). Notwithstanding the motor carrier exemption, the small-vehicle exception provides that the overtime provisions of Section 7 of the FLSA shall apply to a "covered employee." *See* SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-244, 112 Stat. 1572 (2008). A "covered employee" is defined as someone:

> (1) who is employed by a motor carrier or motor private carrier (as such terms are defined by section 13102 of title 49, United States Code, as amended by section 305);
>
> (2) whose work, *in whole or in part*, is defined—
>
>   (A) as that of a driver, driver's helper, loader, or mechanic; *and*
>   (B) as *affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce*, except vehicles—

7

> (i) designed or used to transport more than 8 passengers (including the driver) for compensation;
> (ii) designed or used to transport more than 15 passengers (including the driver) and not used to transport passengers for compensation; or
> (iii) used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of title 49, United States Code, and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103 of title 49, United States Code; *and*
>
> (3) who performs duties on motor vehicles weighing 10,000 pounds or less.

*Id.* § 306(c) (emphasis added).

Here, defendant met its initial burden of showing that the motor carrier exemption applies. Walter Parker, defendant's owner, testified that defendant "is a DOT-registered motor carrier engaged in vehicle towing and recovery services" [Doc. 39-4, p. 2]. Parker also testified that plaintiff "was employed as a tow truck driver whose duties included driving, securing, and transporting vehicles using heavy-duty rollback and wrecker trucks" [*Id.*]. Further, Parker stated that "the vehicles driven by [plaintiff] as part of his duties with [defendant] were certified for interstate use," and plaintiff's assignment's "routinely involved the transportation of vehicles as part of a logistical chain involving interstate movement" [*Id.* at 2–3]. Additionally, Parker stated that plaintiff's "duties with [defendant] included safety-affecting activities on behalf of a motor carrier in interstate commerce" [*Id.* at 3]. Accordingly, defendant has demonstrated that: (1) it is a private motor carrier that provides transportation in interstate commerce; and (2) plaintiff's work activities affect the safety of operation of motor vehicles in interstate commerce. *See Timberline S.*, 925 F.3d at 850.

Plaintiff does not appear to dispute that defendant was an interstate motor carrier, but he challenges the second element based on his own affidavit. Plaintiff's affidavit stated that "[w]ithin the regular scope and course of [his] employment with [defendant], plaintiff did

travel across states lines to complete a tow job" [Doc. 44-1, p. 2]. Moreover, plaintiff's affidavit submits that "the regular course and scope of [plaintiff's] employment [with defendant] was performing road-side tows for non-commercial vehicles[,]" and "the vehicles [plaintiff] routinely drove were not a part of a logistical chain involving interstate commerce" [*Id.*]. The Court finds that plaintiff's testimony is sufficient to create a genuine dispute as to whether plaintiff's duties affect the safety of motor vehicles in commerce. *See Moran*, 788 F.3d at 205 (holding that a plaintiff's testimony can create a genuine issue of material fact foreclosing summary judgment in a lawsuit brought under the FLSA).

Even assuming *arguendo* that the motor carrier exemption applies, the small-vehicle exception only applies to employees "who perform[] duties on motor vehicles weighing 10,000 pounds or less." Pub. L. No. 110-244, § 306(c)(3). Here, plaintiff's and Parker's affidavits conflict. While plaintiff testified that he "operated a vehicle with a GVWR less than 10,000 [pounds] on a weekly basis [while employed by defendant,]" Parker testified that plaintiff "exclusively operated vehicles with a [GVWR] rating of more than 10,000-pounds" [Doc. 39-4, p. 2]. Drawing all reasonable inferences in plaintiff's favor, a reasonable factfinder could find that plaintiff operated trucks weighing less than 10,000 pounds in the course of his employment. Therefore, there is a genuine dispute of material fact as to plaintiff's FLSA overtime violation claim.

**B.      Plaintiff's Motion for Leave to File a Motion for Partial Summary Judgment**

Plaintiff has also requested leave to file a motion for partial summary judgment [Doc. 51], stating that defendant has not met its burden on any FLSA exemption. Defendant

responded [Doc. 52], arguing that plaintiff has not shown good cause, and the proposed motion would be futile.

The deadline for filing dispositive motions has passed [*See* Doc. 34 (as amended by Doc. 50)].  Rule 6(b)(1)(B) provides, "When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B). Excusable neglect exists where "the failure to do something occurred because of a simple, faultless omission to act, or because of a party's carelessness."  *Turner v. City of Taylor*, 412 F.3d 629, 650 (6th Cir. 2005) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993)).  To determine whether the movant has shown excusable neglect, the court must balance five key factors:

> (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith.

*Nafziger v. McDermott Intern., Inc.*, 467 F.3d 514, 522 (6th Cir. 2006).

Applying these factors, the Court finds that there is a danger of prejudice to defendant in granting plaintiff's request for leave to file a motion for partial summary judgment. Specifically, granting plaintiff's motion for leave would require additional briefing by the parties and delay trial in this case, which is more than four years old.  Thus, the first factor weighs against granting plaintiff's motion for leave.

Turning to the length of the delay, the initial summary judgment deadline in this matter was July 18, 2025 [Doc. 34], and defendant timely filed its motion for summary judgment on July 18, 2025 [Doc. 38].  Plaintiff did not file his request for leave to file a motion for partial

summary judgment until December 17, 2025, about five months after the initial summary judgment deadline [Doc. 51].  This delay is significant and weighs in favor of denying plaintiff's request for leave.

Additionally, plaintiff submits that the reason for the delay is that defendant's "failure to carry its burden on any FLSA exemption" could not have been established before the dispositive motion deadline [*Id.* at 3].  But defendant contends that the proposed partial summary judgment motion rests on arguments that have existed since the filing of the complaint on December 21, 2020 [Doc. 52, p. 1; *see* Doc. 1].  Moreover, plaintiff argues that defendant raises the motor carrier act exemption for the first time in its dispositive motion, but defendant submits that plaintiff was on notice of the exemption issue through "discovery, produced records, DOT documentations, and sworn declarations" [Doc. 52, p. 2].  Thus, this factor weighs against granting plaintiff's motion for leave.

Next, the Court finds that the delay was within plaintiff's reasonable control.  As previously discussed, plaintiff had ample time to file a timely dispositive motion in advance of the initial summary judgment deadline.  This factor weighs against granting plaintiff's motion for leave.

Lastly, the Court finds that there is no evidence that the plaintiff acted in good faith by filing a late motion for leave after the passage of the dispositive motion deadline and unsuccessful mediation.  Additionally, the Court has already cautioned the parties that no further continuances would be granted in this case absent extraordinary circumstances [Doc. 50].  Based on the record before the Court, it appears that plaintiff has not shown "good cause" or "excusable neglect" sufficient to modify the scheduling order.  *See* Fed. R. Civ. P. 6(b)(1)(B).  Thus, plaintiff's motion for leave [Doc. 51] will be **DENIED**.

## IV. Conclusion

For all these reasons, defendant's motion to dismiss, or in the alternative, for summary judgment [Doc. 38], is **GRANTED in part and DENIED in part**. Specifically, defendant's motion for summary judgment is granted as to plaintiff's FLSA minimum wage claim, and that claim is **DISMISSED**. Defendant's motion for summary judgment is denied as to plaintiff's overtime claim, which remains pending. Further, plaintiff's motion for leave to file a motion for partial summary judgment [Doc. 51] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE